**Joseph R. Casillas**
**Trent N. Baker**
Datsopoulos, MacDonald & Lind, P.C.
201 West Main St., Ste. 201
Missoula, MT 59802
Phone: (406) 728-0810
Fax: (406) 543-0134
Email:  jrcasillas@dmllaw.com;
tbaker@dmllaw.com

    *Attorneys for Joseph S. Mulroy*

IN THE UNITED STATES DISTRICT COURT,
FOR THE DISTRICT OF MONTANA, MISSOULA DIVISION

| | |
|---|---|
| **NORTHLAND CASUALTY COMPANY, a Connecticut Corporation,** | Cause No. CV-13-232-M-DLC |
| Plaintiff and Counter-defendant, | |
| v. | |
| **JOSEPH S. MULROY DBA YORLUM RANCH AND YORLUM RANCH LTD, NORTHWEST LOG HOMES LLC, and DUANE KEIM,** | **DEFENDANTS' RESPONSE OPPOSING GLACIER'S MOTION FOR SUMMARY JUDGMENT (Doc. 54)** |
| Defendants, | |
| **JOSEPH S. MULROY,** | |
| Counterclaimant and Third-Party Plaintiff, | |
| v. | |
| **GLACIER INSURANCE OF LIBBY, INC., a Montana Corporation,** | |
| Third-Party Defendant. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS.......................................................................................2

TABLE OF AUTHORITIES ............................................................................3

I.   INTRODUCTION .......................................................................................8

II.   LEGAL STANDARD ...............................................................................9

III.   ARGUMENT .............................................................................................9

  A.  Keim/Northwest's claims were properly assigned.........................................10

  B.  Even assuming, *arguendo*, that the claims were not assignable, Keim/Northwest should be ratified, joined, or substituted as the real parties in interest. .......................................................................................18

  C.  The waiver doctrine does not bar Mulroy's individual claims against Glacier. ...............................................................................................19

    i.   Glacier failed to affirmatively plead waiver. ..............................................19

    ii.   Laches and waiver are separate and distinct affirmative defenses..............22

    iii.   Glacier is a stranger to the contract between Mulroy and Keim/Northwest. ...............................................................................................22

    iv.   Mulroy did not waive his individual claims................................................26

    v.   The requisite elements of waiver are for the jury. ......................................27

    vi.   Montana law recognizes Mulroy's individual claims as valid...................28

  D.  The Court should postpone ruling on Glacier's motion to allow for further discovery.......................................................................................30

VI. CONCLUSION...........................................................................................32

CERTIFICATE OF COMPLIANCE.................................................................33

CERTIFICATE OF SERVICE .........................................................................34

# TABLE OF AUTHORITIES

## TABLE OF CASES

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)...........................................9

*Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, (9th Cir. 2004) ...................................18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)........................................9, 31

*Benson v. Diverse Computer Corp.*, ¶ 30, 89 P.3d 981 (Mont. 2004)....................26

*Blackmore v. Dunster*, ¶ 14, 274 P.3d 748 (Mont. 2012)........................................13

*Blough v. Holland Realty, Inc.*, 574 F.3d 1084, (9th Cir. 2009) .............................31

*Burton v. State Farm Mut. Auto. Ins. Co.*, 105 F. App'x 154, (9th Cir. 2004) .......14

*Caledonia Ins. Co. v. Northern Pac. Ry. Co.*, 79 P. 544, (1905)...................... 10, 11

*Coty v. Cogswell*, 50 P.2d 249 (Mont. 1935)...........................................................11

*Diaz v. Blue Cross & Blue Shield*, ¶ 18, 267 P.3d 756 (Mont. 2011) ............. 23, 24

*Dick Anderson Constr., Inc. v. Monroe Constr. Co., LLC*, ¶ 47, 221 P.3d 675

   (2009)....................................................................................................................24

*Dunmore v. United States*, 358 F.3d 1107, (9th Cir. 2004)....................................18

*Edwards v. Cascade County*, ¶ 30, 212 P.3d 289 (Mont. 2009)............................26

*First Sec. Bank of Missoula v. Ranch Recovery Ltd. Liab. Co.*, 976 P.2d 956, 961

   (Mont. 1999) ........................................................................................................19

Fowler v. Hunter, App. LEXIS 175, at *4 (S.C. 2008) ...........................................15

*Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, (11th Cir. 2004)...................24

*Gray v. Grain Dealers Mut. Ins. Co.*, 871 F.2d 1128, (D.C.Cir. 1989) ................15

*Harris v. Sec'y, U.S. Dept. of Veterans Affairs*, 126 F.3d 339, 343, 326 U.S. App. D.C. 362 (D.C.Cir. 1997)..................................................................................20

*Hilbrands v. Far E. Trading Co.*, 509 F.2d 1321, (9th Cir. 1975) .........................19

*Jim's Excavating Serv., Inc. v. HKM Associates*, 878 P.2d 248 (Mont. 1994)  28, 29

*Jones v. Blanas*, 393 F.3d 918, (9th Cir. 2004) .......................................................30

*Kocsis v. Delta Air Lines, Inc.*, 963 F.Supp.2d 1002, at *1018 (Dist. Haw. 2013).30

*Kohler v. Staples the Office Superstore, LLC*, 291 F.R.D. 464, 473 (S.D.Cal. 2013) ..........................................................................................................................21

*Kruzich v. Old Republic Ins. Co.*, ¶ 24, 188 P.3d 983 (Mont. 2008).......................23

*Ludwig v. Spoklie*, 930 P.2d 56, 58-59 (1996).........................................................23

*McGregor v. Mommer*, 714 P.2d 536 (Mont. 1986)..................................................27

*McKay v. Wilderness Dev., LLC*, 221 P.3d 1184 (Mont. 2009) ...............................20

*McKeever v. Or. Mortg. Co.*, 198 P. 752, (1921) .....................................................24

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, (9th Cir. 2001).............................31

*Mitchell v. Carlson*, 313 P.2d 717 (1957)................................................................28

*Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, (6th Cir. 1993) ...............20

*Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, (9th Cir. 1996)..........................31

*Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co.*, 732 F.Supp.2d 1107, (D. Haw. 2010) ...........................................................................................................31

*Palmer v. Bahm*, ¶ 13, 128 P.3d 1031 (Mont. 2006) ...............................................23

*R.C. Hobbs Enterprises, LLC v. J.G.L. Distributing, Inc.*, ¶ 24, 104 P.3d 503

    (Mont. 2004) ...............................................................................................26

*Red Giant Oil Co. v. Lawlor*, N.W.2d 524, 532-33 (Iowa 1995) ...........................15

*Reed v. Woodmen of World*, 22 P.2d 819 (Mont. 1933).........................................17

*Sell v. Am. Family Mut. Ins. Co.*, 2010 U.S. Dist. LEXIS 89889, at *5, 2010 WL

    3488674 (D. Mont. 2010) ...................................................................14

*Sell v. Am. Family Mut. Ins. Co.*, 2011 U.S. Dist. LEXIS 28054, at *2, 2011 WL

    1044563 (D. Mont. 2011) ...................................................................14

*Solis v. Zenith Capital, LLC*, 2009 WL 1324051, at *7 (N.D.Cal. 2009) ..............21

*State ex rel. Keeney v. Ayers*, 92 P.2d 306 (Mont. 1939) .......................................27

*Tatum v. City and County of San Francisco*, 441 F.3d 1090 (9th Cir. 2006)..........31

*Thayer v. Hicks*, 793 P.2d 784, 789 (Mont. 1990)..................................................29

*Thiel v. Johnson*, 711 P.2d 829, 831 (Mont. 1985) ................................................26

*Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).........................................................9

*Tyler v. Fireman's Fund Ins. Co.*, 841 P.2d 538 (Mont. 1992)...............................22

*United States Fire Ins. Co. v. Williamsburg Nat'l Ins. Co.*, 2008 U.S. Dist. LEXIS

    93991, at **18-19 (E.D.Cal. 2008)....................................................20

*VanDyke Const. Co. v. Stillwater Mining Co.*, ¶ 15, 78 P.3d 844 ( Mont. 2003)....26

*Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997)..................................22

*Youngblood v. Am. States Ins. Co.*, 866 P.2d 203, 206 (Mont. 1993) .............. 10, 13

*Zambakian v. Leson*, 234 P. 1065, 1068 (Colo. 1925) ............................................28

## **STATUTES**

§ 1-1-205(1) M.C.A. ...................................................................................................11

§ 1-1-205(2), M.C.A. .................................................................................................11

§ 25-13-402(1)(a)(ii), M.C.A. ...................................................................................12

§ 27-1-501, M.C.A. ...................................................................................................12

§ 30-9A-102(m), M.C.A. ...........................................................................................13

§ 70-2-101, M.C.A. ...................................................................................................11

§ 70-2-102, M.C.A. ...................................................................................................11

§ 30-9A-109(4)(l), M.C.A. ........................................................................................12

§ 1351 of the Montana Civil Code..............................................................................11

## **RULES**

Rule 17(a)(3), F.R.Civ.P. ...........................................................................................18

Rule 25, M.R.Civ.P. ...................................................................................................12

Rule 56(a), F.R.Civ.P. ..................................................................................................9

Rule 56(d), F.R.Civ.P. ............................................................................................9, 30

Rule 8(c)(1), F.R.Civ.P. .......................................................................................19, 20

# <u>OTHER AUTHORITIES</u>

5 C.J. *Assignments* § 52 (1916)....................................................................16

J. Pomeroy, *Equity Jurisprudence* (3rd ed. 1905) .....................................................16

*Restatement (Second) of Contracts* § 302 (1981) ....................................... 23, 24, 29

Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 37:1, at

    5 (4th ed. 2000) ......................................................................................23

T. Street, *The Foundations of Legal Liability* 86-88 (1906)...................................17

COMES NOW Defendant, Counterclaimant and Third-Party Plaintiff, Joseph S. Mulroy dba Yorlum Ranch and Yorlum Ranch Ltd. ("Mulroy"), individually and as assignee of the claims and defenses of Defendants Northwest Log Homes, LLC ("Northwest") and Duane Keim ("Keim"), and submit this Response Opposing Glacier Insurance of Libby, Inc.'s ("Glacier") Motion for Summary Judgment (Doc. 54).  For the reasons discussed herein, Glacier's motion should be denied.

## I.  INTRODUCTION

Glacier seeks summary judgment as to all of the claims asserted against it in the Third-Party Complaint (Doc. 29).  The claims include: negligence, negligent misrepresentation, constructive fraud and fraudulent concealment.  *Id.*  As the face of the Third-Party Complaint makes clear, the claims are asserted by Mulroy individually and as assignee of Keim/Northwest.  Glacier incorrectly argues that none of the claims were assignable because "Montana law prohibits the assignment of tort claims."  (Doc. 54, p. 2, ¶ 2).  Glacier's argument fails, however, because it is predicated on a mischaracterization of Montana law and an unreasonable and overly broad application of an old rule that unliquidated personal injury claims are not assignable.  Glacier also argues that Mulroy waived his right to bring claims against it in his individual capacity.  But, for the myriad of reasons discussed below, Glacier's waiver argument is without merit.  Even assuming, *arguendo*, that the claims at issue were not assignable, summary judgment is not proper because

Mulroy has valid claims against Glacier in his individual capacity that were not waived.  Finally, if the Court is inclined to grant Glacier's motion, in whole or in part, it should postpone ruling to allow for further discovery pursuant to Rule 56(d), F.R.Civ.P.

## II.  LEGAL STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), F.R.Civ.P.  Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered.  *Id.* at 248.  In ruling on a motion for summary judgment, a court must view the evidence "in the light most favorable to the opposing party."  *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).  "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 1863 (quoting *Anderson*, 477 U.S. at 255).

## III.  ARGUMENT

## A. Keim/Northwest's claims were properly assigned.

Glacier incorrectly argues that Keim/Northwest's claims against Glacier were not assignable because they are "torts."  Glacier's argument is based upon an imprecise characterization of Montana law, which really only prohibits assignment of certain personal tort claims, such as personal injury claims.  Glacier relies on the following dicta, which upon further examination, does not support a broad prohibition on the assignment of all torts: "Montana law has long held that a property damage claim is assignable, while a cause of action growing out of a personal right, such as a tort, is not assignable."  *Youngblood v. Am. States Ins. Co.*, 866 P.2d 203, 206 (Mont. 1993) (citing *Caledonia Ins. Co. v. Northern Pac. Ry. Co.*, 79 P. 544, 545 (1905).  *Youngblood* did not address assignability of a claim for negligence in the procurement of insurance, or of torts generally, but instead addressed personal injury claims and whether a choice of law provision in a personal injury protection endorsement was enforceable against an insured and required application of Oregon law, which permitted medical pay subrogation. *Youngblood*, 866 P.2d at 204.

*Caledonia Ins*. also does not prohibit assignment of a claim for negligence in the procurement of insurance, or of torts generally.  Rather, the court allowed subrogation, which it conflated with assignment, of an award of interest "[i]n an action for the breach of an obligation not arising from contract, and in every case

of oppression, fraud or malice."  The case relied on Section 1351 of the Montana

Civil Code, which provides: "A thing in action, arising out of the violation of a

right of property, or out of an obligation, may be transferred by the owner."  The

reference to property was not limited to real property but included rights in

personal property and *Caledonia Ins.* did not address or prohibit assignment of

negligence-based claims, but suggested an "action growing out of the violation of

some purely personal right, as, for instance, a simple personal tort, as an action for

malicious prosecution, for libel, etc." is "generally held to be nonassignable."  *Id.*[1]

    *Caledonia Ins.* referred to "things in action," which are defined under Montana

law as "a right to recover money or other personal property by a judicial

proceeding." § 70-2-101, M.C.A.   The statute referenced remains the law in

Montana:

> A thing in action arising out of the violation of a right of property or out of
> an obligation may be transferred by the owner. Upon the death of the owner,
> it passes to the owner's personal representatives except when in the cases
> provided in this title it passes to the owner's devisees or successor in office.

§ 70-2-102, M.C.A.  Things in action are personal property. § 1-1-205(1) M.C.A.

Such personal property is generally assignable as security.  § 1-1-205(2), M.C.A.

They are also subject to execution by collecting or selling them.  § 25-13-

402(1)(a)(ii), M.C.A. ("The sheriff or levying officer shall . . . execute the writ

---

[1] *Coty v. Cogswell*, 50 P.2d 249 (Mont. 1935), is also inapposite.  *Coty* did not impose a wholesale prohibition on assignment of tort claims.  *Coty* held that "[a]n unliquidated claim for damages for tort is not subject to garnishment even in equity."  The *Coty* court focused on the distinction between a cause of action for personal injury and a cause of action based on contract.  Mulroy is not prosecuting an unliquidated claim for personal injury damages.

against the property of the judgment debtor not later than 120 days after receipt of

the writ by . . . collecting or selling the things in action").

Other Montana statutes also recognize the right to assign or transfer a cause

of action without carving out any exception for torts:

> (1) An action, cause of action, or defense does not abate because of the death
> or disability of a party or the transfer of any interest in the action or defense,
> but whenever the cause of action or defense arose in favor of the party prior
> to the party's death or disability or transfer of interest, the action or defense
> survives and may be maintained by the party's representatives or successors
> in interest. If the action has not been begun or defense interposed, the action
> may be begun or defense interposed in the name of the party's
> representatives or successors in interest. If the action has been begun or
> defense interposed, the action or proceeding may be continued as provided
> in Rule 25, M.R.Civ.P.
> (2) Actions brought under 27-1-513 and this section must be combined in
> one legal action, and any element of damages may be recovered only once.

§ 27-1-501, M.C.A.

Montana's Uniform Commercial Code on Secured Transactions ("UCC")

specifically addresses and recognizes the assignability of commercial tort claims.

Mont. Code Ann. § 30-9A-109(4)(l).  The UCC defines "Commercial tort claim"

as a claim arising in tort if:

> (i) the claimant is an organization; or
> (ii) the claimant is an individual and the claim:
> (A) arose in the course of the claimant's business or profession; and
> (B) does not include damages arising out of personal injury to or   the
>     death of an individual.

§ 30-9A-102(m), M.C.A.[2]

Mulroy's claims are commercial tort claims and, like other personal property, are assignable.  The claims are for negligence and related actionable conduct in the procurement of commercial liability insurance.  The claims were: owned and validly assigned by Keim/Northwest; they arose in the course of Keim/Northwest's business as a log home builder; and, they do not include damages arising out of personal injury to or the death of an individual.

More recently, the Montana Supreme Court reviewed *Youngblood* and related cases and held that Montana law prohibits the assignment of, or execution upon, pending personal injury claims.  *Blackmore v. Dunster*, ¶ 14, 274 P.3d 748 (Mont. 2012) (emphasis supplied).  The cases reviewed in *Blackmore* support a prohibition on the assignment of, or execution on, legal malpractice claims and personal injury claims or related insurance proceeds, but they do not support a prohibition on assignment of negligence claims against an insurance agent.  *Id.* at ¶¶ 9-10.

This Court, applying Montana law, has also acknowledged the validity of assigned claims against insurance companies.  United States Magistrate Judge Carolyn Ostby of the Billings Division entered Findings and Recommendation

---

[2] Other assignable claims for statutory violations fall under, *inter alia*, § 33-18-202, M.C.A. (misrepresentation and false advertising of insurance policies); § 33-18-203, M.C.A. (false or deceptive advertising prohibited); and, § 33-18-204, M.C.A.  The allegations in Mulroy's Complaint can reasonably be construed to fit the definition of these statutory claims and, indeed, discovery is ongoing concerning the precise nature and extent of the relationship between Keim/Northwest and Glacier.

finding an assignment of claims valid where the tortfeasor consented to judgment in the underlying case and assigned all first-party rights under his insurance policy to the victim. *Sell v. Am. Family Mut. Ins. Co.*, 2010 U.S. Dist. LEXIS 89889, at *5, 2010 WL 3488674 (D. Mont. 2010). The victim entered into a covenant not to execute against the tortfeasor and asserted first-party bad faith claims against the insurer. *Id*. The court confirmed the validity of the assignment, quoting with approval from a Kentucky Supreme Court case approving assignment of claims for negligence in the procurement of insurance policies and noting that is the majority rule. *Sell*, at *26-27(quoting *Associated Ins. Serv. v. Garcia*, 307 S.W.3d 58, 64 (Ky. 2010)). Magistrate Judge Ostby's Findings and Recommendations were adopted in their entirety and objections thereto were overruled. *Sell v. Am. Family Mut. Ins. Co.*, 2011 U.S. Dist. LEXIS 28054, at *2, 2011 WL 1044563 (D. Mont. 2011). Similarly, Judge Donald W. Molloy and the Ninth Circuit, in *Burton v. State Farm Mut. Auto. Ins. Co.*, 105 F. App'x 154, 159-60 (9th Cir. 2004), treated as valid an assignment of an insured's tort claims against his insurer.

Numerous courts in other states have reached the same conclusion and allowed assignment of tort claims identical and similar to those assigned to Mulroy. The Arizona Supreme Court held that an assignee of an insured's rights could bring an action against the insured's agent for negligence in failing to procure liquor liability coverage. *Webb v. Gittlen*, 174 P.2d 275, 281 (Ariz. 2008).

The court explained why unliquidated claims not involving personal injury are generally assignable and found that public policy and Arizona law supported the assignment of negligence claims against insurance agents. *Webb,* 174 P.2d at 276-278. The court specifically analyzed the assignability of professional negligence claims against insurance agents, distinguished them from legal malpractice claims, found good public policy reasons for allowing assignment and overruled a lower court decision prohibiting assignment. *Webb*, 174 P.2d at 278-28.

In *Fowler v. Hunter* the South Carolina Court of Appeals stated "the majority of courts having addressed this have elected to allow such an assigned claim to proceed." *Id.*, 2008 S.C. App. LEXIS 175, at *4 (S.C. 2008) (citing *Campione v. Wilson*, 661 N.E.2d 658, 662 (Mass. 1996). (held: even though the settlement included a release, the injured party could proceed in prosecuting the insured's assigned negligence claim against the insurance brokers); *Red Giant Oil Co. v. Lawlor*, N.W.2d 524, 532-33 (Iowa 1995) (held: assigned claim for insurance agent's negligence is valid)). Courts should flatly reject the "somewhat metaphysical contention" that the legal basis for claims against insurers and insurance agents disappear when the insured becomes insulated from liability due to a release or covenant not to execute. *Campione*, 661 N.E.2d at 662 (quoting *Gray v. Grain Dealers Mut. Ins. Co.*, 871 F.2d 1128, 1132-1133 (D.C.Cir. 1989).

Glacier fails to cite any Montana law that prevents assignment to Mulroy of Keim/Northwest's claims against their insurer and insurance agent.  The majority rule allows such assignments and the majority of courts addressing the issue have held contrary to Glacier's position.  The assigned claims are not unliquidated claims for personal injury.  The monetary value of the claims was established through settlement with Keim/Northwest and the judgment rendered in the state trial court.

Our law recognizes that tort causes of action such as the torts at issue are assignable as most other personal property.  The American approach to the assignment of tort claims is based on the equivalency of survivability and assignability.  That is, if a tort claim does not die with the tort victim, but can be sued upon by the victim's personal representative, it is deemed to be assignable by the victim *inter vivos.* 5 C.J. *Assignments* § 52 (1916).  J. Pomeroy, in his treatise on equity jurisprudence, described torts which survived, and were thus assignable, as generally including those causing injury to real and personal property, and those arising from fraud, deceit, or other wrongs which damage an estate, real or personal.  J. Pomeroy, *Equity Jurisprudence* (3rd ed. 1905).  Among those not surviving, and thus not assignable, were torts to the person or character, where the injury was limited to the body or feelings.  *Id.* at § 1275; *see generally* 3 T. Street,

*The Foundations of Legal Liability* 86-88 (1906).  The Montana Supreme Court has expressly adopted this rule:

> "Nonassignability of claims:…'Generally the test applied in determining the assignability of a chose in action is whether or not it would survive and pass to the personal representative of a decedent.  If it would so survive, it may be assigned, so as to pass an interest to the assignee, which he can in most jurisdictions enforce in his own name; if it does not so survive, it is not assignable either at law or in equity."

*Reed v. Woodmen of World*, 22 P.2d 819 (Mont. 1933).

The law has evolved from the English prohibition of assignments of all causes of action to the current American status where assignability is directly related to survivability.  Glacier fails to recognize or appreciate that the claims assigned to Mulroy would have passed to Keim's personal representative upon his death.  Mulroy does not dispute that unliquidated personal injury torts are often nontransferable.  But, the archaic reasons for once also prohibiting assignment of some property-related torts, such as fear of maintenance and difficulties in valuation, are not persuasive in contemporary society where commercial torts are routinely assigned.  Mulroy is not prosecuting claims for injuries to Keim's body or feelings.  To adopt Glacier's position that assignment of property-related torts is prohibited would be to set bad precedent which wholly ignores the reasons behind the nonassignability of personal injury claims rule and which flies directly in the face of statutory and common law in Montana and other jurisdictions.  Glacier's motion should be denied.

**B. Even assuming, _arguendo_, that the claims were not assignable, Keim/Northwest should be ratified, joined, or substituted as the real parties in interest.**

Even if the claims were not assignable they cannot be dismissed.  Instead, if Mulroy is not the real party in interest (which he is), an opportunity must be allowed for Keim/Northwest to ratify, join, or be substituted into the case as the real parties in interest to pursue the claims against Glacier and Northland.  Rule 17(a)(3), F.R.Civ.P., provides:

> **Joinder of the Real Party in Interest**.  The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

A court determines whether a plaintiff is the real party in interest by examining the controlling substantive law.  _Allstate Ins. Co. v. Hughes_, 358 F.3d 1089, 1093-94 (9th Cir. 2004).  If a claimant without standing can obtain ratification from the real party in interest, such ratification shall have the same effect as if the action had been commenced in the name of the real party in interest.  _Dunmore v. United States_, 358 F.3d 1107, 1112-13 (9th Cir. 2004).  To protect the interests of the insured, an insured should be allowed to proceed as a substituted party to prosecute

an action in their own name.  *Hilbrands v. Far E. Trading Co.*, 509 F.2d 1321, 1323 (9th Cir. 1975).

As discussed above, Glacier's effort to obtain summary judgment based on the nonassignability of Keim/Northwest's claims against their insurer and insurance agent should be rejected.  *See e.g., First Sec. Bank of Missoula v. Ranch Recovery Ltd. Liab. Co.*, 976 P.2d 956, 961 (Mont. 1999).  But, even if the claims were not assignable, the Court cannot dismiss the case against Glacier until a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the case.  If the Court finds that Mulroy is not the real party in interest, Mulroy must be given the opportunity to bring in Keim/Northwest to prosecute the assigned claims.

## C. The waiver doctrine does not bar Mulroy's individual claims against Glacier.

### i.   Glacier failed to affirmatively plead waiver.

Rule 8(c)(1), F.R.Civ.P., provides in relevant part: "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including…waiver."[3]  Accordingly, Rule 8(c) requires parties to raise affirmative defenses in the pleadings.  *United States Fire Ins. Co. v. Williamsburg Nat'l Ins.*

---

[3] Rule8(c)(1), M.R.Civ.P., is nearly identical and it also requires waiver to be affirmatively pled.

*Co.*, 2008 U.S. Dist. LEXIS 93991, at **18-19 (E.D.Cal. 2008).   Rule 8(c) is intended to prevent surprise and prejudice by giving the opposing party notice of the affirmative defense and time to rebut it.   *Bush v. Woods (In re Bush)*, 2005 Bankr. LEXIS 3366, at *16 (9th Cir. 2005) (citing *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993); *Harris v. Sec'y, U.S. Dept. of Veterans Affairs*, 126 F.3d 339, 343, 326 U.S. App. D.C. 362 (D.C.Cir. 1997)).   Under Rule 8(c), an affirmative defense is generally waived and excluded from the case if not pleaded in the answer.   *Bush* at *16.   Countless federal courts have refused to consider affirmative defenses because they were untimely raised.   *Tancredi v. Dive Makai Charters*, 823 F.Supp. 778, 785 (D. Haw. 1993).

Similarly, under Montana law, failure to plead an affirmative defense results in the waiver of that defense.   In *McKay v. Wilderness Dev., LLC*, 221 P.3d 1184 (Mont. 2009), the Montana Supreme Court affirmed the district court's denial of a motion for summary judgment on the basis that the defendant did not affirmatively plead waiver as a defense in its Answer.   *McKay* at ¶ 29.

Glacier filed its Answer (Doc. 25) on August 21, 2014.   Glacier pleaded a number of affirmative defenses, but not waiver.   Glacier attempted to "reserve the right to amend or add to [its] affirmative defenses as discovery progresses."   (Doc. 25, Affirmative Defenses, ¶ 10).   However, a reservation clause is not a valid affirmative defense.   *See, e.g., Solis v. Zenith Capital, LLC*, 2009 WL 1324051, at

*7 (N.D.Cal. 2009) (striking an attempt to reserve affirmative defenses for a future date as improper); *Kohler v. Staples the Office Superstore, LLC*, 291 F.R.D. 464, 473 (S.D.Cal. 2013) (held: "the mere 'reservation of affirmative defenses is not an affirmative defense.'").   Glacier made no contention that Mulroy waived his own direct claims against Glacier in its Preliminary Pretrial Statement (Doc. 18) or at the Preliminary Pretrial Conference on August 13, 2014.[4]   Glacier's Answer to the Amended Third-Party Complaint (Doc. 30) also does not contain an affirmative defense of waiver.   Glacier has not sought to again amend its Answer or Preliminary Pretrial Statement (Doc. 18) to date.

Central to requiring the pleading of affirmative defenses, including waiver, is the prevention of unfair surprise.  Glacier should not be permitted to lie behind a log and ambush Mulroy with an unexpected defense at the summary judgment stage.  Glacier's late assertion of a waiver defense did not give Mulroy fair notice and thus would result in prejudice if considered.  Until now, the defense has not been raised or in any way litigated by the express or implied consent of the parties.  Glacier's failure to comply with 8(c) or otherwise seek to amend its pleadings sooner to include a waiver defense is fatal.  Glacier cannot take advantage of any exception to the general rule that failure to plead an affirmative defense results in a waiver.  Glacier failed to act in a timely fashion by raising a waiver defense "at the

---

[4] Glacier's Preliminary Pretrial Statement provides in relevant part: "If Glacier's Motion to Dismiss is denied, then it reserves this statement upon answering the Third-Party Complaint."  (Doc. 18, Section C).

earliest possible moment." *Bush* at 18 (citing *Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997)). The Court should decline to entertain Glacier's waiver argument on the merits.

### ii.  Laches and waiver are separate and distinct affirmative defenses.

Glacier may argue that Mulroy had fair notice of a waiver defense because Glacier affirmatively pleaded laches in its Answer (Doc. 25). Glacier would be incorrect. In *Tyler v. Fireman's Fund Ins. Co.*, 841 P.2d 538 (Mont. 1992), the appellant argued that laches, waiver and equitable estoppel applied and warranted a reversal of the district court's order. The Montana Supreme Court rejected this argument because the appellant's answer contained affirmative defenses for laches and estoppel, but "[w]aiver was not even pled." Similarly, Glacier's failure to separately and affirmatively plead a waiver defense resulted in a waiver of the same.

### iii. Glacier is a stranger to the contract between Mulroy and Keim/Northwest.

Glacier's waiver argument is predicated entirely upon language in the Settlement Agreement and Assignment of Claims ("Settlement Agreement") between Mulroy and Keim/Northwest. (Doc. 53, Exhibit A). Because a settlement agreement is a contract, the Montana Supreme Court applies contract law to

determine whether the agreement is valid and enforceable, as well as to interpret the rights and obligations thereunder. *Kruzich v. Old Republic Ins. Co.*, ¶ 24, 188 P.3d 983 (Mont. 2008). Generally, unless he is an intended third-party beneficiary of the contract, a stranger to a contract lacks standing to bring an action for breach of that contract. *Palmer v. Bahm*, ¶ 13, 128 P.3d 1031 (Mont. 2006) (citing *Ludwig v. Spoklie*, 930 P.2d 56, 58-59 (1996) (holding that strangers to a contract who are not intended third-party beneficiaries of the contract lack standing to bring an action based on an alleged violation of that contract); 13 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 37:1, at 5 (4th ed. 2000) (noting that, with the exception of third-party beneficiaries, "courts recite talismanically…that 'strangers to a contract' have no rights under the contract").

Not everyone who may benefit from performance, or who may suffer from non-performance, of a contract between two other persons is permitted to enforce the contract. *Diaz v. Blue Cross & Blue Shield*, ¶ 18, 267 P.3d 756 (Mont. 2011). The Montana Supreme Court, relying upon *Restatement (Second) of Contracts* § 302 (1981), has described an intended third-party beneficiary as follows:

> "(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."

*Dick Anderson Constr., Inc. v. Monroe Constr. Co., LLC*, ¶ 47, 221 P.3d 675 (2009) (quoting *Restatement (Second) of Contracts* § 302(1)(a)-(b)).

"Performance of a contract will often benefit a third [party,]" but unless the contracting parties intended to benefit the third party, the third party's status is that of an incidental beneficiary.  *Diaz* at ¶ 19.  "[T]here is a plain distinction between a promise, the performance of which may benefit a third party, and a promise made expressly for the benefit of a third party."  *Id.* (citing *McKeever v. Or. Mortg. Co.*, 198 P. 752, 753 (1921).   A party cannot assume he or she is a third party beneficiary merely because he or she has benefitted or stood to benefit from a contract between two other parties.   *Diaz* at ¶ 21 (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  Instead, a party must be able to "show from the face of the contract that it was intended to benefit [him or] her."  *Id.*

Glacier's argument is a breach of contract claim disguised as a claim in equity for waiver.   Glacier asserts that Mulroy breached a promise to Keim/Northwest not to make a claim against any party other than Northland that may be liable for the losses, damages, and injuries expressly contemplated in the Settlement Agreement.   Glacier's argument fails for two separate and independently dispositive reasons.

First, as the plain language in the Settlement Agreement makes abundantly clear, Mulroy did not promise not to sue anyone other than Northland.  Mulroy merely represented that no other claims were contemplated at the time the Settlement Agreement was entered into.  But, the Settlement Agreement also expressly contemplated additional claims being made in the future – "In the event [Mr. Mulroy] make[s] any additional claims which directly or indirectly results in additional liability exposure to [Mr. Keim and Northwest]…"  (Doc. 53, Exhibit A, p. 3) (emphasis supplied).  The language upon which Glacier relies in support of its argument is a standard contractual indemnification and hold harmless agreement between Mulroy and Keim/Northwest.

Second, Glacier is a stranger to the Settlement Agreement; thus, Glacier has no rights thereunder.  A look at the gravamen of Glacier's argument shows that it is grounded in contract rather than equity.  There is a plain distinction between a promise by Mulroy, the performance of which may benefit Glacier, and a promise made expressly for the benefit of Glacier, such as a promise not to sue it. (emphasis supplied).  The face of the Settlement Agreement does not show that it was intended to benefit Glacier.  Instead, the language at issue was intended to benefit Keim/Northwest in the form of protection against claims asserted by other parties whom Mulroy ultimately elected to sue.  There is no indication that Mulroy intended to give Glacier the benefit of any promised performance.  At best,

Glacier's status is that of an incidental beneficiary which lacks standing to assert a breach of the Settlement Agreement.

### iv. Mulroy did not waive his individual claims.

Waiver is a voluntary and intentional relinquishment of a known right or claim. *Edwards v. Cascade County*, ¶ 30, 212 P.3d 289 (Mont. 2009).  It may be proved by express declarations or by a course of acts and conduct which includes the belief that the intent and purpose was waiver.  *Id., citing R.C. Hobbs Enterprises, LLC v. J.G.L. Distributing, Inc.*, ¶ 24, 104 P.3d 503 (Mont. 2004).  To establish waiver, the party asserting waiver must demonstrate the other party's knowledge of existing right, acts inconsistent with that right, and resulting prejudice to the party asserting waiver.  *Edwards*, ¶ 30, *citing VanDyke Const. Co. v. Stillwater Mining Co.*, ¶ 15, 78 P.3d 844 ( Mont. 2003).  Waiver may be expressed or implied.  *Thiel v. Johnson*, 711 P.2d 829, 831 (Mont. 1985).  A right may be waived by implication as well as by agreement.  *Id.*  Although waiver is mainly a question of intention and must be manifested in some unequivocal manner, a waiver must be founded upon express written statements, oral express statements or acts or conduct which induces the belief that the intention and purpose is to waive.  *Id.*  Implied waiver requires a detrimental reliance by the party who is led by the conduct to believe a waiver has occurred.  *Benson v. Diverse Computer Corp.*, ¶ 30, 89 P.3d 981 (Mont. 2004).

Mulroy did not waive his direct claims against Glacier.  As discussed above, the plain language in the Settlement Agreement shows that additional claims against parties other than Northland were contemplated.  Mulroy did nothing to unequivocally demonstrate an intention to waive his ability to sue Glacier.  Glacier does not allege, and indeed there is no evidence, that Mulroy ever orally expressed an intention to waive his direct claims.  Mulroy's conduct could not have induced a belief that his intention was to waive his claims.  To the contrary, Mulroy filed his Third-Party Complaint against Glacier along with his initial Answer (Doc. 6).  The question of waiver is mainly a question of intention and the best evidence of intention is to be found in the language used by the parties.  *State ex rel. Keeney v. Ayers*, 92 P.2d 306 (Mont. 1939).  The language in the Settlement Agreement does not reveal intent on Mulroy's part to waive his claims and Glacier's waiver argument is belied by Mulroy's action in suing Glacier.  Because an intention to make a waiver is not clearly made to appear by the evidence, Glacier's argument fails.

### v.  The requisite elements of waiver are for the jury.

In *McGregor v. Mommer*, 714 P.2d 536 (Mont. 1986), the Montana Supreme Court held:

> The presence of voluntariness and the requisite intent are necessarily questions of fact.  Consequently, we hold that the district court did not err by presenting the issue of waiver by plaintiffs to the jury.

*See also Mitchell v. Carlson*, 313 P.2d 717 (1957) ("However, waiver is a question of fact, depending upon the circumstances of each case, and this is to be referred to the jury.") (citing *Zambakian v. Leson*, 234 P. 1065, 1068 (Colo. 1925)).  Glacier did not submit any admissible evidence of the voluntariness of Mulroy's alleged waiver or his intent other than the Settlement Agreement itself.  Regardless, these questions of fact should be reserved for the jury to decide at trial.  Summary judgment is improper given the pleadings and evidence before the Court at this juncture.

### vi. Montana law recognizes Mulroy's individual claims as valid.

Glacier improperly seeks complete dismissal of all claims against it in this lawsuit.  But, Glacier's motion disregards the fact that Mulroy has viable claims against Glacier not only as the assignee of Keim/Northwest, but also individual claims which were not waived.  Thus, even if the Court rules in Glacier's favor on the assignability issue, summary judgment is not proper because Mulroy's individual claims stand.

The Montana Supreme Court has found negligence-based duties in analogous cases involving a professional's duties to third parties.  In *Jim's Excavating Serv., Inc. v. HKM Associates*, 878 P.2d 248 (Mont. 1994), HKM argued there was no contractual privity between Jim's Excavating Services ("JES")

and HKM and that the court could impose purely economic tort liability on HKM.
*JES*, 878 P.2d at 252.  JES claimed it suffered economic damages due to HKM's
alleged negligent design and planning of the project even though Lockwood Water
Users Association independently retained HKM as project engineer.  *Id.*, 878 P.2d
at 250.  The *JES* court concluded that HKM could not escape liability simply
because it did not know specifically that JES would receive the bid when HKM
knew some contractor would rely on its plans.  *Id.*, 878 P.2d at 254.  The court
adopted the approach set forth in § 552 of the Restatement and held:

> Thus, we hold that a third party contractor may successfully recover for
> purely economic loss against a project engineer or architect when the design
> professional knew or should have foreseen that the particular plaintiff or an
> identifiable class of plaintiffs were at risk in relying on the information
> supplied.

*JES*, 878 P.2d at 255; *see also Thayer v. Hicks*, 793 P.2d 784, 789 (Mont. 1990)
(the "ordinary negligence rule" expands the [professional's] duty to all third parties
who "might reasonably and foreseeably obtain and rely upon the [professional's]
work product.").

Applying this formulation of a professional's duties to third parties, Glacier
owed a duty to Mulroy because Mulroy would foreseeably rely on Glacier's
fulfillment of its duties to obtain an insurance application from Keim/Northwest, to
learn of Keim/Northwest's insurance needs and to properly secure all proper and
available insurance coverage and limits available for the premiums paid.  At all

times relevant to the claims at issue, it was reasonably foreseeable that Mulroy could be damaged by Glacier's various acts and omissions in providing insurance services to Keim/Northwest.    Anyone who Keim/Northwest did work for in constructing log homes fall within an identifiable class of plaintiffs who were at risk in relying on the information and services provided by Glacier to Keim/Northwest; thus, Mulroy's individual claims stand and summary judgment is not proper.

## D. The Court should postpone ruling on Glacier's motion to allow for further discovery.

Rule 56(d), F.R.Civ.P., provides:

> **When Facts Are Unavailable to the Nonmovant**.  If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Under Federal Rule of Civil Procedure 56(d), a district court may postpone ruling on a summary judgment motion to allow for further discovery where the non-moving party needs "additional discovery to explore facts essential to justify the party's opposition."  *Kocsis v. Delta Air Lines, Inc.*, 963 F.Supp.2d 1002, at *1018 (Dist. Haw. 2013), (citing *Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004)).  The Ninth Circuit has noted that although Rule 56(d) on its face gives district courts "the discretion to disallow discovery where the non-moving party

cannot yet submit evidence supporting its opposition, the United States Supreme Court has restated the rule as <u>requiring</u>, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.'" *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (emphasis supplied) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986)).  Whether to grant or deny a Rule 56(d) request for further discovery by a party opposing summary judgment is within the discretion of the district court.  *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 920-921 (9th Cir. 1996).

A Rule 56(d) affidavit must identify "the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment. *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). The party must also demonstrate that "there is some basis for believing that the information sought actually exists."  *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 n. 5 (9th Cir. 2009).  Finally, "[t]o prevail on a Rule 56(d) motion, the movant must also show diligence in previously pursuing discovery."  *Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co.*, 732 F.Supp.2d 1107, 1125 (D. Haw. 2010) (citing *Nidds*, 113 F.3d at 921).

A Declaration in support of Mulroy's Rule 56(d) request is being filed contemporaneously herewith.

## VI. CONCLUSION

Glacier's entire argument misses the mark because the assigned claims are not unliquidated claims for personal injury.  The Montana cases Glacier relies upon do not prohibit assignment of property-related torts such as an insurance agent's negligence in procuring commercial liability insurance.  Glacier asks the Court to unreasonably extend the nonassignability of personal injury claims rule to the commercial torts at issue.  The law does not provide for such a wholesale prohibition on assignment.  If, however, the Court finds that the claims were not assignable and Mulroy is not the real party in interest, Mulroy must be given the opportunity to bring in Keim/Northwest to prosecute the assigned claims.  Finally, Glacier's waiver argument fails for the myriad of reasons discussed above. Glacier's motion should be denied.

DATED this 11th day of December, 2015.


DATSOPOULOS, MacDONALD & LIND, P.C.


By:   /s/ Trent N. Baker
       Joseph R. Casillas
       Trent N. Baker

       *Attorneys for Joseph S. Mulroy*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief is double spaced, and written in proportionately-spaced Time New Roman 14-point typeface.  Absent certificates and required tables, the brief contains 6,013 words.

By:    /s/ Trent N. Baker

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served upon the following counsel of record, by the means designated below, this 11th day of December, 2015.

 1, 2   ECF
_____ U.S. Mail
_____ Fedex
_____ Hand-Delivery
_____ Facsmile


1)Marshal L. Mickelson
Annie N. Harris
Corette Black Carlson & Mickelson
129 West Park Street
P.O. Box 509
Butte, MT 59703

2)Perry J. Schneider
Tim E. Dailey
Milodragovich, Dale & Steinbrenner, P.C.
620 High Park Way
P.O. Box 4947
Missoula, MT  59806-4947



                    By:   /s/ Trent N. Baker