IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

**FILED**



MAR 3 1 2016

Clerk, U.S. District Court
District Of Montana
Missoula

| | |
|---|---|
| NORTHLAND CASUALTY COMPANY, a Connecticut Corporation, | CV 13–232–M–DLC |
| Plaintiff and Counter-Defendant, | ORDER |
| vs. | |
| JOSEPH S. MULROY DBA YORLUM RANCH AND YORLUM RANCH LTD, NORTHWEST LOG HOMES LLC, and DUANE KEIM, | |
| Defendants, | |
| JOSEPH S. MULROY, | |
| Counterclaimant and Third-Party Plaintiff, | |
| vs. | |
| GLACIER INSURANCE OF LIBBY, INC., a Montana Corporation, | |
| Third-Party Defendant. | |

Before the Court is Third-Party Defendant Glacier Insurance of Libby,

Inc.'s ("Glacier") motion for summary judgment. Central to this motion is

whether Montana law prohibits the assignment of personal injury claims. For the

-1-

reasons explained below, the Court grants Glacier's motion.

## BACKGROUND

This case arises out of a construction defect claim involving a beetle-infested log home. In June 2006, Joseph Mulroy ("Mulroy") hired Duane Keim ("Keim") and Keim's company, Northwest Log Homes ("Northwest"), to construct a log home on Mulroy's property in Trego, Montana. Northwest purchased the logs to be used in the home from a log broker out of Striker, Montana, who in turn purchased the logs from one or more loggers in the northwest Montana region. The logs were standing dead timber. Northwest processed the logs by peeling, notching, pressure washing, and sorting them, but did not chemically treat the logs with insecticide. Northwest completed the project, which included a remodel of a guest house on the property, in 2008.

During the time Northwest constructed the log home, it was insured through a commercial general liability insurance policy issued by Northland Casaulty Company ("Northland") with $1,000,000 per occurrence and $2,000,000 aggregate limits. Glacier was the independent insurance agency that procured insurance from Northland for Keim and Northwest.

Through 2009 and 2010, Mulroy and his wife began noticing infestation of wood-boring beetles in the log home. Mulroy attempted to treat the logs himself,

-2-

but was unsuccessful. In 2011, Mulroy brought the infestation issue to

Northwest's attention and made a claim to Northland. After nineteen months of

litigation regarding the coverage under the CGL policy for Mulroy's claims, Keim

and Northwest confessed judgment and assigned to Mulroy the right to bring their

claims related to the Northland insurance policy in exchange for a covenant not to

execute. This settlement agreement included the following language:

> This assignment includes any and all claims regarding insurance
> coverage, procurement or claims handling practices, including but not
> limited to any claims for negligence, negligent misrepresentation,
> breach of contract, breach of covenant of good faith and fair dealing
> and violations of the Montana Unfair Claims Practices Act.

(Doc. 53-1 at 2.) The agreement further provided that:

> Other than claims assigned under paragraph 2(c) above, [Mulroy]
> represent[s] that no additional claims are contemplated against any
> other party potentially liable for the losses, damages, and injuries for
> which this Agreement is given, with the exception of claims that have
> been or may be asserted by Plaintiffs against the insurers of [Keim
> and Northwest]. In the event [Mulroy] make[s] any any additional
> claim which directly or indirectly results in additional liability
> exposure to [Keim and Northwest] for the losses, injuries, and
> damages for which this Agreement is given, [Mulroy] covenant[s] and
> agree[s] to indemnify and save [Keim and Northwest] harmless from
> all such claims and demands, including reasonable attorneys' fees and
> all other expenses necessarily incurred.

(*Id.* at 4.) Therefore, Mulroy agreed that he would bring claims only as an

assignee of Keim or against Keim and Northwest's insurers (i.e. Northland) on his

-3-

own behalf.

Subsequently, Mulroy brought a third-party complaint against Glacier alleging—in both his individual capacity and as assignee of Keim and Northwest—negligence, negligent misrepresentation, fraudulent concealment, and constructive fraud. Glacier filed the instant motion for summary judgment on November 20, 2015, arguing that the assignment of personal injury tort claims is prohibited under Montana law, and further asserting that Mulroy waived his right to bring such claims under the settlement agreement. Mulroy filed his response opposing Glacier's motion on December 11, 2015, and further filed for a discovery continuance pursuant to Rule 56(d) of the Federal Rules of Civil procedure. Mulroy then filed an amended third-party complaint, alleging claims for breach of contract and breach of the covenant of good faith and fair dealing.

## LEGAL STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary

judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248. In ruling on a motion for summary judgment, a court must view the evidence "in the light most favorable to the opposing part." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 1863 (quoting *Anderson*, 477 U.S. at 255).

**ANALYSIS**

A federal court sitting in diversity applies the substantive law of the forum state to state law claims. *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011). Thus, the Court decides this motion for summary judgment pursuant to Montana law.

## I.    Assignment of personal injury tort claims.

Glacier moves for summary judgment on the ground that Montana law prohibits assigning one's right to bring a personal injury tort claim. Glacier asserts that while an action involving a right in property is assignable, there is a blanket rule in Montana against the assignment of personal injury tort claims. Mulroy counters that Montana law does not explicitly prohibit the assignment of a negligence claim in the procurement of insurance and that other jurisdictions allow

the assignment of such claims. None of Mulroy's arguments withstand the preclusion of his claims as assignee under Montana common law. All of Mulroy's contentions constitute personal injury tort claims, and so the Court holds as a matter of law that Glacier is entitled to summary judgment.

"Montana law has long held that a property damage claim is assignable, while a cause of action growing out a personal right, such as a tort, is not assignable." *Youngblood v. Am. States Ins., Co.*, 866 P. 2d 203, 206 (Mont. 1993). Since 1905, the Montana Supreme Court has upheld the distinction between *ex contractu* (from a contract) and *ex delicto* (from a wrong) claims and their ability to be assigned to a third party. *Caledonia Ins. Co. v. N. Pac. Ry. Co.*, 79 P. 544, 545 (Mont. 1905); *Quitmeyer v. Theroux*, 395 P.2d 965, 969 (Mont. 1964); *Blackmore v. Dunster*, 274 P.3d 748, 751 (Mont. 2012) (holding that Montana law permits the transfer of the proceeds from a tort cause of action, but not the cause of action itself); *Masters Group Int'l, Inc. v. Comerica Bank*, 352 P.3d 1101, 1118 (Mont. 2015), *reh'g denied* (Aug. 4, 2015) ("Neither Montana nor Michigan law permits the assignment of a personal injury cause of action to a third party.")[1]

---

[1] Glacier's reliance on *Cody v. Cogswell*, 50 P.2d 249 (Mont. 1935), for the proposition that Montana has long opposed assignment of personal injury claims, is misplaced. *Cody* never dealt with the issue of assignment, but instead involved a writ of attachment on a personal injury cause of action before a judgment was rendered.

Therefore, the Court must look at the gravamen of the action to determine if the claims are grounded in contract or tort. *Quitmeyer*, 395 P.2d at 969; *Erickson v. Croft*, 760 P.2d 706 (Mont. 1988) (finding that the gravamen of the complaint against the broker alleging existence of implied contract was fraud and negligence, and thus, the claim was sound in tort and not contract).

This general rule of nonassignability stems from basic tort law: tort rights are personal and cannot be separated from the person. R. D. Hursh, Annotation, *Assignability of Claim for Personal Injury or Death*, 40 A.L.R.2d 500, §§ 2–3 (1955); Mont. Code Ann. § 27–1–106(2) ("An injury to property consists in depriving its owner of the benefit of it, which is done by taking, withholding deteriorating, or destroying it. Every other injury is an injury to the person."). The only exception to this overarching prohibition is when a statute overrides the common law. Montana has delineated various statutory exceptions to the ban on assignment of personal injury claims. *See, e.g.*, Mont. Code Ann. § 70–2–102 (assignment of a property right violation claim by survivorship); § 27–1–501 (assignment of a civil liability claim by survivorship); § 33–18–242 (assignment of claim for actual damages caused by insurer's violation of unfair claim settlement practices); § 30–9A–109(4)(1) (assignments involving secured transactions). Thus, absent statutory authorization, the assignment of personal

injury tort claims and the assignment of future proceeds arising out of personal injury tort claims are prohibited.

In the instant case, this Court finds that Mulroy's third-party claims in Counts One through Four are based strictly upon negligence and fraud, which constitute personal injury tort claims. This Court is persuaded by the rationale of the majority of Montana Supreme Court rulings that personal injury tort claims cannot be assigned. While Mulroy cites a plethora of statutory exceptions to this general prohibition of assignment in his response brief, none of his claims fall under any of the exceptions. Mulroy further cites to cases in other jurisdictions that are not controlling on this issue. Finally, Mulroy contends that other federal judges in the District of Montana have acknowledged the validity of assigned claims against insurance companies, which is of little help here since Glacier is not the insurer.

Therefore, because Mulroy is only pleading personal injury tort claims against Glacier, which cannot be assigned under Montana law, this Court concludes that Mulroy's claims fail as a matter of law. The Court will grant Glacier's motion on Counts One through Four to the extent Mulroy pleads them as an assignee.

## B.     Waiver under the settlement agreement.

Glacier further argues that Mulroy waived his right to sue Glacier individually when he voluntarily and intentionally signed the settlement agreement which allowed him to only bring claims stemming from the underlying insurance policy. Mulroy opposes waiver on the grounds that Glacier has failed to affirmatively plead waiver. The parties have subsequently stipulated that Glacier can file an amended answer raising the affirmative defense of waiver, which has now occurred. (Doc. 63.) Therefore, this issue can now be decided on the merits.

Under Montana law, waiver is a question of intention and must be manifested in an unequivocal manner. "[W]aiver is a voluntary and intentional relinquishment of a known right, claim or privilege which may be proved by express declarations or by a course of acts and conduct so as to induce the belief that the intention and purpose was to waive." *Idaho Asphalt Supply v. State, Dept. of Transp.*, 991 P.2d 434, 437 (Mont. 1999). A party asserting waiver must prove the other party had knowledge of an existing right and acted inconsistent with that right, which resulted in prejudice to the party asserting waiver. *Edwards v. Cascade Cnty.* 212 P.3d 289, 295 (Mont. 2009).

Here, the settlement agreement indicates that Mulroy knew of his existing right to pursue claims against various third-party defendants when he agreed to its

terms. Under subsection 2(c), Keim and Northwest specifically assigned their rights "arising under and related to Commercial Insurance Policy No. WS00114." (Doce. 53-1 at 2). The assignment included "any and all claims regarding insurance coverage, procurement or claims handling practices, including but not limited to any claims for negligence, negligent misrepresentation, breach of contract, breach of implied covenant of good faith and fair dealing and violations of the Montana Unfair Claims Practices Act." (*Id.*) Mulroy then agreed in subsection 6 to not bring any claims that do not fall under 2(c): "Other than claims assigned under Paragraph 2(c) above, [Mulroy] represent[s] that no additional claims are contemplated against any other party potentially liable for the losses, damages , and injuries for which this Agreement is given." (Doc. 53-1 at 6.) However, subsection 6 further clarifies that "[i]n the event [Mulroy] make[s] any additional claim which directly or indirectly results in additional liability exposure to Defendants for the losses, injuries, and damages for which this Agreement is given, [Mulroy] covenant[s] and agree[s] to indemnify and save Defendants harmless . . . ." (*Id.*)

Under these settlement terms, the Court does not agree that Mulroy unequivocally manifested an intention to waive his right to pursue additional claims on his own behalf against other parties not specified within the settlement

-10-

agreement. Subsection 6 explains that Mulroy could make additional claims against other parties at a later time, as long as he indemnified and held Keim and Northwest harmless. Therefore, Mulroy did not waive his right to bring claims against Glacier in his individual capacity.

## C. Motion to allow for further discovery.

In his response to Glacier's motion for summary judgment, Mulroy moves to postpone ruling on the motion to allow for further discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. Mulroy suggests that he has a reasonable basis to believe there are additional facts that discovery will reveal relating to a potential breach of contract or breach of fiduciary duty claim. Because Mulroy has since filed an amended third-party complaint alleging these claims, and because these additional claims are nonessential to the issues presented by the subject motion, Mulroy is not entitled to a continuance to conduct additional discovery pursuant to Rule 56(d).

Accordingly, IT IS ORDERED that:

(1)     Third-Party Defendant Glacier's motion for summary judgment (Doc. 52) is GRANTED IN PART. The motion is GRANTED with respect to Counts One through Four of Mulroy's amended third-party

complaint, brought by Mulroy as assignee of Keim's and Northwest's rights under the Northland policy. The motion is DENIED in all other respects.

(2)     Third-Party Plaintiff Mulroy's motion to postpone ruling on summary judgment to allow for further discovery is DENIED.

DATED this 31st day of March, 2016.

Dana L. Christensen, Chief Judge
United States District Court