

**FILED**

AUG 0 9 2016

Clerk, U S District Court
District Of Montana
Missoula

| | |
|---|---|
| NORTHLAND CASUALTY COMPANY, a Connecticut Corporation,<br><br>      Plaintiff and<br>      Counter-Defendant,<br><br>   vs.<br><br>JOSEPH S. MULROY DBA YORLUM RANCH AND YORLUM RANCH LTD, NORTHWEST LOG HOMES LLC, and DUANE KEIM,<br><br>      Defendants,<br><br>JOSEPH S. MULROY,<br><br>      Counterclaimant and<br>      Third-Party Plaintiff,<br><br>   vs.<br><br>GLACIER INSURANCE OF LIBBY, INC., a Montana Corporation,<br><br>      Third-Party Defendant. | CV 13–232–M–DLC<br><br><br>ORDER |

Before the Court are the following motions in this insurance coverage case:

(1) Defendant Joseph S. Mulroy's ("Mulroy") motion to reconsider, pursuant to

Rules 59 and 60 of the Federal Rules of Civil Procedure, the Court's order

granting Plaintiff Northland Casualty Company's ("Northland") motion for

summary judgment regarding coverage; (2) Northland's second motion for

summary judgment regarding Mulroy's counterclaims; and (3) Third-Party

Defendant Glacier Insurance of Libby, Inc.'s ("Glacier") second motion for

summary judgment regarding Mulroy's contract and individual-capacity tort

claims. For the reasons explained below, Mulroy's motion is denied and

Northland's and Glacier's motions are granted.

Having recited the facts of this case on numerous occasions in prior orders,

the Court will proceed straight to its analysis of the pending motions.

## LEGAL STANDARDS

### I.    Motion for reconsideration

Post-judgment motions for reconsideration, to the extent they are properly

labeled as such, are governed by Rules 59(e) and 60(b) of the Federal Rules of

Civil Procedure. "A district court may grant a Rule 59(e) motion if it is presented

with newly discovered evidence, committed clear error, or if there is an

intervening change in the controlling law." *Wood v. Ryan*, 759 F.3d 1117, 1121

(9th Cir. 2014) (citations and internal quotation marks omitted). "Clear error

exists when . . . [a] court is left with the definite and firm conviction that a mistake

has been made." *In re Adamson Apparel, Inc.*, 785 F.3d 1285, 1291 (9th Cir. 2015) (citations omitted). "[A] Rule 59(e) motion is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Id.* (citations and internal quotation marks omitted).

"Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances," which include the interests of justice. *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). "Relief under Rule 60(b)(6) will not be granted unless the moving party is able to show both injury and circumstances beyond its control prevented timely action to protect its interest." *Gardner v. Martino*, 563 F.3d 981, 991 (9th Cir. 2009). The rule represents "an exception to finality," *Gonzalez*, 545 U.S. at 529, and "was not intended . . . to afford a substitute for appeal." *Twentieth Century Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341–1342 (9th Cir. 1981) (quoting *Title v. United States*, 263 F.2d 28, 31 (9th Cir. 1959)).

Pre-judgment motions for reconsideration, however, are governed by Rule 7.3 of the District of Montana Local Civil Rules. Rule 7.3(a) requires the movant to seek leave of the Court before filing the motion. Rule 7.3(b)(2) provides that the motion for leave may assert, as grounds for filing the motion for reconsideration, that "new material facts emerged or a change of law occurred

after entry of the order."

## II. Motion for summary judgment

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248. In ruling on a motion for summary judgment, a court must view the evidence "in the light most favorable to the opposing part." *Tolan v. Cotton,* 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 1863 (quoting *Anderson*, 477 U.S. at 255).

### ANALYSIS

A federal court sitting in diversity applies the substantive law of the forum state to state law claims. *Mason & Dixon Intermodal, Inc. v. Lapmaster Intern. LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011). Therefore, as in previous orders in this

case, the Court decides these motions pursuant to Montana law.

## I.    Mulroy's motion for reconsideration

Mulroy contends that the Court's July 21, 2015 order finding no coverage

for the damage to Mulroy's log home, and Defendants Duane Keim's ("Keim")

and Northwest Log Homes' ("Northwest") actions in constructing that home, has

been rendered erroneous by the Montana Supreme Court's April 19, 2016 decision

in *Employers Mutual Casualty Company v. Fisher Builders, Inc.*, 371 P.3d 375

(Mont. 2016) [hereinafter, *Employers Mutual*]. Mulroy claims that as a result of

*Employers Mutual*, "it [is] legally irrelevant whether or not the failure of [] Keim

or Northwest . . . to chemically treat logs was itself a volitional act or intentional

business choice"—a conclusion which formed the basis for the Court's conclusion

that there was no "occurrence" in this case. (Doc. 92 at 8.) Northland counters[1]

that while *Employers Mutual* clarified the law with respect to whether particular

circumstances constitute an "occurrence," nevertheless there was no "occurrence"

---

[1] Northland also correctly points out that Mulroy's motion is procedurally improper
because it fails to comply with Local Rule 7.3, to which Mulroy replies that enforcing the Local
Rules in this instance "would be the proverbial elevation of form over substance." (Doc. 99 at
3.) While the Court rejects Northland's procedural argument here, it is not, as Mulroy seems to
suggest, because the Local Rules represent some inflexible, trivial set of requirements which a
litigant can ignore on a whim. On the contrary, Rule 7.3 provides ample ground to deny
Mulroy's motion for reconsideration, regardless of how firmly he is convinced that *Employers
Mutual* resets the table in this case. Instead, the Court reaches the substance of Mulroy's motion
simply for the sake of expediency.

when Keim built Mulroy a log home with beetle-infested logs. Moreover,

Northland claims that multiple policy exclusions not expressly considered by the

Court in the July 2015 order preclude coverage here[2]. The Court agrees with

Northland and denies Mulroy's motion to reconsider the coverage question.

In its July 2015 order, the Court concluded that the facts established in the

underlying action did not trigger coverage under the commercial general liability

("CGL") insurance policy issued by Northland to Keim and Northwest. Citing

*Blair v. Mid-Continent Casualty Company*, 339 Mont. 8, 12 (Mont. 2007), and

*Landa v. Assurance Company of America*, 307 P.3d 284, 289 (Mont. 2013), the

Court indicated that an "occurrence" under the CGL policy at issue cannot include

intentional acts on the part of the insured. The analysis, then, was straightforward:

because Keim and Northwest admitted liability to the counts in the underlying

complaint and to Mulroy's allegation that "[r]easonable and prudent standards in

the construction of log homes include the chemical treatment of logs for beetle

larvae and insects prior to installation" (Doc. 39-1 at 3), Keim's and Northwest's

"decision not to treat the logs . . . [could not] reasonably be characterized as an

---

[2]Similar to the Court's observation in the July 2015 order, though there is no need to reach the applicability of policy exclusions even in light of *Employers Mutual*, coverage would likely be precluded in this case by those exclusions in the CGL policy designed to prevent the policy from serving as a warranty of Keim's and Northwest's workmanship—i.e., the "your work" exclusion and similar provisions.

-6-

'occurrence' under the policy, as it was a volitional act and business choice . . . ."
(Doc. 49 at 17.)

In *Employers Mutual*, the Montana Supreme Court ruled that "occurrence" analyses focused exclusively on the intentionality of an insured's acts—akin to the Court's analysis described above—are incomplete. 371 P.3d at 378–380. Similar to the case at bar, the underlying action in *Employers Mutual* involved issues with a construction project. The plaintiffs in the underlying action, the Slacks, hired Defendant Fisher Builders to remodel their existing home on Flathead Lake. *Id.* at 376. The county planning department conditioned the building permit for the project on the Slacks and Fisher Builders incorporating the existing structure into the remodel and leaving the existing deck unchanged. *Id.* Once the project was underway, Fisher Builders discovered a carpenter ant infestation in the existing structure, and took steps to remove the affected lumber. *Id.* Ultimately, however, the deck collapsed and the county revoked the building permit. *Id.* The Slacks then sued Fisher Builders for negligence and Fisher Builders tendered the claim to its insurer, Employers Mutual Casualty Company ("EMC"), who defended Fisher Builders under a reservation of rights. *Id.* at 376–377. Fisher Builders and the Slacks settled, with Fisher Builders consenting to judgment and assigning its rights under the EMC policy to the Slacks. *Employers Mutual*, 371 P.3d at 377.

-7-

However, EMC then filed a declaratory action, alleging that there was no coverage under the CGL policy in place because the Slacks' injuries were not the result of an "occurrence," and the state court granted EMC's motion for summary judgment in that regard. *Id.*

On appeal, EMC maintained its coverage position, arguing that *Blair* and *Landa* precluded coverage because Fisher Builders intentionally removed the infested boards from the existing structure, which resulted in collapse of the deck and revocation of the building permit. *Id.* at 377–378. Fisher Builders and the Slacks, citing *Northwestern National Casualty Company v. Phalen*, 597 P.2d 720 (1979), argued that there was an "occurrence" under the circumstances because, though Fisher Builders' intentional acts triggered the Slacks injuries, Fisher Builders neither expected nor intended the injuries at the time of those acts. *Id.* The Montana Supreme Court agreed, holding that the proper inquiry for determining whether acts constitute an "occurrence" is: "(1) whether the act itself was intentional, and (2) if so, whether the consequence or resulting harm stemming from the act was intended or expected from the actor's standpoint." *Id.* at 378 (citing *Phalen*, 597 P.2d at 725). Because the district court failed to consider this second prong of the analysis, the Montana Supreme Court reversed and remanded. *Id.* at 381.

Though *Phalen* provides that it is "the actor's standpoint" which dictates whether a consequence was expected or intended, the Montana Supreme Court in *Employers Mutual* made clear that "the second prong of the analysis . . . is an objective inquiry." 371 P.3d at 379. The rationale for this is obvious—few, if any, insureds in cases such as these would acknowledge their subjective intent to harm the parties injured by their actions. Thus, it is left to the courts "to determine objectively what injuries could reasonably be expected to result from an intentional act." *Id.*

Turning to the case at bar, the Court acknowledges that its previous coverage analysis now appears incomplete. However, like the *Employers Mutual* court's analysis of *Blair* and *Landa*, application of the two-step *Phalen* inquiry does not change the result here. At the first step, it is undisputed that Keim's and Northwest's decision not to treat the logs used in constructing Mulroy's home was an intentional act. At the second step, regardless of Keim's or his insurance agent's personal experience in the log home building business, or whether there has to-date been a finding or legal conclusion that Keim and Northwest violated industry standards, the presence of wood-boring beetles in logs is a reasonably expected result of the intentional act of purchasing standing dead timber. This is especially true given that the logs came from a log broker in a region of North

America suffering from a widespread and highly-publicized beetle epidemic, albeit caused by a different type of beetle. Moreover, if the presence of the beetles is an objectively, reasonably expected result, then surely the potential for those insects to cause damage to the logs in which they burrow and reside is an objectively, reasonably expected result.

Because *Employers Mutual* changes the coverage analysis in this case, but does not result in coverage for Mulroy's injuries, his motion for reconsideration is denied.

## II.    Northland's second motion for summary judgment

Northland moves for summary judgment on Counts One through Six of Mulroy's Second Amended Counterclaim, which include the following claims: (1) breach of contract, (2) negligence, (3) negligent misrepresentation, (4) constructive fraud, (5) fraudulent concealment, and (6) violations of Montana's Unfair Trade Practices Act ("UTPA"), Montana Code Annotated § 33–18–201. (Doc. 63 at 8–15.) As will be explained, the Court grants Northland's motion with respect to each count.

### A.    Breach of contract claim

Mulroy contends that Northland breached its insurance contract with Keim and Northwest by failing to: (1) "disclose material information regarding

-10-

coverage"; (2) "provide a meaningful defense by failing to consider the interests of its insured and settlement of the underlying action"; and (3) "indemnify its insured." (*Id.* at 8–9.) The Court has already considered subparts two and three of this claim—Northland satisfied its duty to defend and, because there was no coverage for Mulroy's injuries, had no duty to settle or provide indemnification to Keim and Northwest in the underlying action. (Doc. 49 at 18.) As to the third subpart, Mulroy fails to cite any provision in the insurance policy outlining Northland's contractual duty to disclose material information regarding coverage[3]. Instead, as Northland aptly points out, Mulroy attempts to argue that his breach of contract claim is in essence a placeholder for any number of contractual claims that may or may not ultimately stick. While it is true that "[t]here are a number of ways in which an insurer can breach its contract" (Doc. 82 at 19), Mulroy has chosen three[4], had summary judgment entered on two of them, and fails to prove

---

[3] The Court struggles to imagine what such a provision would even look like, given that the text of the insurance policy itself consists entirely of "material information regarding coverage."

[4] The Court rejects Mulroy's contention that, pursuant to Rule 15(b) of the Federal Rules of Civil Procedure, he should be permitted to argue a heretofore unasserted claim for breach of the implied covenant of good faith and fair dealing, based on his expert witness's "inject[ion of] the issue into this litigation." (Doc. 82 at 21.) When a party asserts issues outside of the pleadings in opposition to a motion for summary judgment, courts in the Ninth Circuit should construe the assertion as a motion to amend the pleadings out of time, pursuant to Rule 15(b). *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014). Courts should, in turn, review the motion pursuant to Rule 15(a), and should consider the following with respect to the motion: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and

-11-

the third. The Court grants Northland's motion with respect to Count One of Mulroy's Amended Counterclaim.

## B. Tort claims

Mulroy asserts claims against Northland, individually and as assignee of Keim and Northwest, for negligence, negligent misrepresentation, constructive fraud, and fraudulent concealment. The Court has ruled, with respect to similar claims against Glacier, that personal injury tort claims are not assignable under Montana law. (Doc. 69 at 8.) Thus, the Court grants Northland's motion for summary judgment as to Mulroy's tort claims brought as assignee of Keim and Northwest. This leaves Mulroy's individual-capacity tort claims.

### 1. Negligence

As to his negligence claim, Mulroy contends that Northland owed him the following duties under the law: (1) "a duty of reasonable care in the provision [of] insurance necessary to meet the needs of its insureds and prospective insureds"; (2) "the duty to reasonably inquire about the coverage needs of the insureds and to

---

whether the plaintiff has previously amended the complaint." *Id.* (citing *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)). These five factors cut against granting Mulroy leave to amend—there is no reasonable excuse for waiting two and a half years to assert a breach of the covenant claim, and likewise no excuse for failing to assert the claim in two amended pleadings, the latter of which Mulroy filed just two months before Northland's instant motion for summary judgment. Moreover, considering the Court's rulings on Northland's duties to defend, settle, and indemnify, adding a breach of the covenant claim is likely a futile amendment.

insure the provision of necessary coverage"; and (3) "the duty of reasonable care to properly train, supervise and direct the activity of its agents." (Doc. 63 at 10.) He further argues that Northland breached those duties by failing to properly train and supervise insurance agents selling its insurance policies, and by failing to meet the coverage needs of its insureds. (*Id.*) Northland counters that if the above duties were owed by anyone under the circumstances, Montana law provides that they were owed by Glacier, the insurance agent. Northland is correct.

"It is well established that an insurance agent owes an absolute duty to obtain the insurance coverage which an insured directs the agent to procure." *Monroe v. Cogswell Agency*, 234 P.3d 79, 86 (Mont. 2010). While in the process of evaluating a client's coverage needs and prospectively reviewing insurance policies for the client, an independent insurance agent—one who, like Glacier, "does not have an exclusive relationship with one particular insurer"—does not represent the insurer. *Id.* at 88. Instead, the insurance agent "only becomes an agent of the insurer . . . after it has selected that insurer's specific policy" for the client. *Id.*

Because Mulroy and Northland have no relationship whatsoever absent Keim's and Northwest's assignment, and the Court has ruled that Keim's and Northwest's tort claims were not assignable, it follows that Northland owed no

-13-.

duty directly to *Mulroy* with respect to Keim's and Northwest's insurance purchasing and coverage. Nevertheless, the record also demonstrates that Northland did not have a legal duty to provide *Keim and Northwest* any particular coverage or inquire about their coverage needs, and in fact did not even communicate with Keim and Northwest in any manner regarding coverage. At the time Keim and Northwest purchased insurance from Glacier, and Glacier gathered information regarding the type of coverage best suited for Keim and Northwest, Glacier did not serve as Northland's agent, and any of Glacier's statements or representations could not be attributed to Northland through agency principles. Likewise, Northland had no duty to train and supervise Glacier or its employees at the time Glacier procured coverage for Keim and Northwest because Glacier was not Northland's agent until after the procurement occurred. If any party owed Keim and Northwest a duty with regard to provision of requested coverage, or to properly train and supervise employees to that end, it was Glacier. Accordingly, the Court grants Northland motion for summary judgment on Mulroy's negligence claim.

### 2. Negligent misrepresentation, constructive fraud, and fraudulent concealment

Apart from disagreeing with the Court's previous determination that Keim

and Northwest could not assign their tort claims to Mulroy, Mulroy does not respond to Northland's motion for summary judgment regarding his individual-capacity negligent misrepresentation, constructive fraud, and fraudulent concealment claims. The Court therefore considers Northland's motion on these claims well-taken. However, on their merits, these claims are subject to summary judgment in Northland's favor. Each tort requires proof of an untrue or incomplete representation by the alleged tortfeasor. *See, e.g., Deichl v. Savage*, 216 P.3d 749, 753 (Mont. 2009) (negligent misrepresentation); *Dewey v. Stringer*, 325 P.3d 1236, 1240 (Mont. 2014) (constructive fraud); *Durbin v. Ross*, 916 P.2d 758, 762 (Mont. 1996) (fraudulent concealment). Nothing in the record suggests that Northland made any representations, of any kind, to Keim and Northwest prior to their purchase of the CGL policy. Certainly, then, Northland made no representations to Mulroy. Ultimately, it appears that the only representations made by Northland came after the beetle infestation became apparent in July 2011, and took the form of true statements regarding whether Mulroy's losses were covered. For these reasons, the Court grants Northland's motion for summary judgment on the remainder of Mulroy's tort claims.

## C.     UTPA claim

Mulroy, individually and as assignee of Keim and Northwest, asserts a

three-pronged UTPA claim against Northland. He alleges that Northland: (1) "misrepresented or omitted pertinent facts regarding the insurance policy and coverage thereunder"; (2) "failed to conduct a reasonable investigation which would have belied [Northland's] positions on defense and indemnity"; and (3) "placed such unreasonable conditions on the provision of defense and indemnity that they were tantamount to a failure to affirm or deny coverage within a reasonable time." (Doc. 63 at 15; *see* Mont. Code Ann. § 33–18–201(1), (4), (5).) Because the Court has ruled that there was no coverage for Mulroy's injuries under the CGL policy, and that Northland breached neither its duty to defend nor its duty to indemnify, Mulroy's UTPA claim fails as a matter of Montana law. *See* Mont. Code Ann. § 33–18–242(5) ("An insurer may not be held liable under [subsections (1), (4), and (5)] if the insurer had a reasonable basis in law or in fact for contesting the claim"); *Truck Ins. Exchange v. Waller*, 828 P.2d 1384, 1388 (Mont. 1992); *Steadele v. Colony Ins. Co.*, 260 P.3d 145, 150 (Mont. 2011) ("where an insurance policy excludes coverage, a third party's bad faith claim fails as a matter of law"); *Truck Ins. Exchange v. O'Mailia*, 343 P.3d 1183, 1188 (Mont. 2015) (insured's first-party bad faith counterclaim was properly dismissed in the absence of coverage, because the claim was "dependent on whether the [insurer's] policy was applicable to the underlying claims"). The Court grants

-16-

Northland's motion for summary judgment on Mulroy's UTPA claim.

## III.  Glacier's second motion for summary judgment

On March 31, 2016, the Court granted in part Glacier's first motion for summary judgment, finding that Keim and Northwest could not assign their personal injury tort claims to Mulroy.  After Glacier filed that motion, but prior to the Court's ruling, Mulroy filed his Second Amended Third-Party Complaint, wherein he asserted for the first time breach of contract and breach of the covenant of good faith and fair dealing claims.  Thus, currently pending against Glacier are Mulroy's individual-capacity negligence, negligent misrepresentation, constructive fraud, and fraudulent concealment claims, as well as his contract-related claims brought as assignee of Keim and Northwest.  Glacier moves for summary judgment on all of these remaining claims.

### A.  Tort claims

The above discussion pertaining to Northland's motion for summary judgment on Mulroy's tort claims is applicable to Glacier's motion as well.  As to Mulroy's negligence claim, it is clear that Glacier's duties with respect to procurement of insurance coverage—some of which Mulroy articulates in his third-party pleading—flowed to Keim and Northwest, as the clients, insureds, and parties requesting insurance products.  *Monroe*, 234 P.3d at 86.  There is no basis

in Montana law, however, for extending those duties to an insured's customers. Indeed, to hold so would create an impossible requirement for insurance agents, who would henceforth be responsible for informing anyone who hired the agents' insurance clients of the details of those clients' coverage, and for estimating whether a potential set of circumstances might fall within or outside of that coverage. Thus, Mulroy's negligence claim as assignee fails because it could not be assigned, and his individual-capacity claim fails because Glacier did not owe him the duties he alleges.

Mulroy's individual-capacity negligent misrepresentation, constructive fraud, and fraudulent concealment claims also fail for reasons similar to those discussed above. Just as there is no evidence of any misrepresentation on Northland's part towards Keim, Northwest, or Mulroy, there is no evidence of any misrepresentation on Glacier's part towards Mulroy. Glacier and Mulroy had never communicated regarding Keim's and Northwest's CGL policy until they first discussed the beetle infestation in July 2011, at which time Glacier insurance agent Kevin Peck ("Peck") purportedly stated "he thought it was covered or that . . . it should be covered." (Doc. 87-2 at 12.) This statement cannot be considered a representation sufficient to trigger a fraud-based claim because it came after the injury at issue, and thus could not have caused any detrimental reliance. Apart

from Peck expressing his personal view about Mulroy's claim, there was no communication, written or oral, true or false, between Mulroy and Glacier prior to July 2011.

Mulroy attempts to gain a foothold specific to his negligent misrepresentation claim by citing Peck's alleged statement to Keim in 2005 that the Northland CGL policy would cover replacement of rotten logs in a structure. (Doc. 78-1 at 10.) Glacier and Peck deny this statement, and Mulroy in turn contends that it constitutes a material fact issue because he relied upon Keim's and Northwest's assurance that they were adequately insured for the project. (Doc. 88 at 27.) However, even if Peck did make this statement, Keim and Northwest never relayed it to Mulroy, nor did they ever discuss the full scope of the CGL policy or whether certain factual circumstances would fall within coverage. Instead, the record reflects that, in 2005, Keim and Northwest requested and received a general liability policy from Northland through Peck, and in 2007, before hiring him to build the main log home on his property, Mulroy simply asked Keim if he had general liability insurance. The record simply does not support the conclusion that Glacier affirmatively misrepresented or concealed information.

Based on the foregoing, the Court grants Glacier's motion for summary judgment with respect to Mulroy's individual-capacity tort claims.

## B. Contract claims

Glacier moves for summary judgment on Mulroy's breach of contract and breach of the covenant of good faith and fair dealing claims, contending that both claims actually sound in tort and therefore could not have been assigned to him under Montana law. Mulroy counters that contract claims are assignable, that he nevertheless would have an individual-capacity contract claim against Glacier as a third-party beneficiary[5], and that Montana law allows simultaneous contract and tort claims for the breach of a professional services contract.

Mulroy's assigned contract rights and claims stem from what he describes as "the agreement by Glacier to provide Keim and Northwest with insurance services including advice, consultation, sale and renewal of appropriate insurance." (Doc. 63 at 25.) The parties appear to agree that such an implied agreement exists. (*See* Doc. 77 at 8–9.) With respect to his breach of contract claims, Mulroy contends that implicit in the implied contract were Glacier's "duties to properly evaluate the insurance needs of Keim and Northwest, to advise Keim and Northwest regarding insurance needs and the availability of appropriate

---

[5]Mulroy's Second Amended Third-party Complaint contains only assignment-based contract claims and belies this individual-capacity theory of contract liability—not until his response to the instant motion for summary judgment has Mulroy asserted a third-party beneficiary theory. As it is not specifically pled, the Court will not consider this basis for liability.

insurance products, to properly assist in the procurement and renewal of the same, and to accurately explain the coverage obtained and disclose material information regarding the same." (Doc. 63 at 26.) Mulroy also contends that the implied contract contained an implied covenant of good faith and fair dealing, and that Glacier breached the covenant "by failing to provide accurate information and by failing to observe reasonable commercial standards applicable to Glacier's industry when it consulted with and advised Keim and Northwest regarding sale and renewal of appropriate insurance." (*Id.* at 27.)

As the Court discussed in its March 31, 2016 order regarding Glacier's first motion for summary judgment, when the core substance of a claim affects how that claim will proceed in the courts, the Montana Supreme Court consistently and under a wide range of circumstances looks to the gravamen of the claim. *See, e.g., Erickson v. Croft,* 760 P.2d 706 (Mont. 1988) (statutes of limitations); *Tin Cup Cnty. Water and/or Sewer Dist. v. Garden City Plumbing & Heating, Inc.,* 200 P.3d 60, 67 (Mont. 2008) ("The plaintiff may choose between a tort and contract cause of action only where the substance of the complaint and the nature of the action give them the right to choose. [The plaintiff], therefore, may pursue a contract cause of action only if the gravamen of its complaint sounds in contract. [The plaintiff] must point to the violation of a specific contractual provision in

-21-

order for its complaint to sound in contract.") (citations omitted); *Lay v. State Dep't of Military Aff., Disaster & Emergency Servs. Div.*, 351 P.3d 672 (Mont. 2015) (looking to the gravamen of the complaint in determining whether the Montana Human Rights Act provides an exclusive remedy).

Here, the duties purportedly assumed by Glacier through selling Keim and Northwest an insurance policy are nearly exactly the same duties alleged by Mulroy to have been breached in his negligence claim against Glacier. Mulroy cannot point to any specific contractual provisions imposing these duties upon Glacier, nor does he cite to any record evidence that the duties were contemplated in the implied oral contract between Glacier, Keim, and Northwest. As a result, the evidence before the Court compels the conclusion that Mulroy's contract claims are merely tort claims pled in the language of contract. The phrasing of the claims supports this conclusion, as does their timing—Mulroy amended his third-party claims during the pendency of Glacier's first motion for summary judgment, and one could certainly conclude that Mulroy opted to include the contract claims as a hedge against a finding by this Court that personal injury tort claims are not assignable in Montana. Indeed, absent the "contract" claims, this order would have ended three pages ago.

Having concluded that Mulroy's contract claims, as pled, are actually tort

claims cloaked in the language of contract, the Court further finds that the claims were not assignable to Mulroy under Montana law. Consequently, the Court grants Glacier's motion for summary judgment on Mulroy's breach of contract and breach of the covenant of good faith and fair dealing claims.

## CONCLUSION

It is clear from the substantial record in this case, developed over numerous rounds of motions for summary judgment, that liability for the damage to Mulroy's home falls squarely and solely on Keim's and Northwest's shoulders. Glacier did nothing more than sell Keim and Northwest exactly what they asked for, and Northland did nothing more than defend Keim and Northwest in the underlying action until its opinion on coverage was judicially confirmed. Liability cannot be shifted in this case as a result of Mulroy's decision to settle the underlying action in exchange for an assignment of rights or the failure of Keim and Northwest to grasp the extent of their CGL coverage.

Accordingly, IT IS ORDERED that:

(1)     Mulroy's motion for reconsideration (Doc. 90) is DENIED.

(2)     Northland's second motion for summary judgment regarding Mulroy's counterclaims (Doc. 66) is GRANTED.

(3)     Glacier's second motion for summary judgment regarding Mulroy's

third-party claims (Doc. 75) is GRANTED.

(4)     Glacier's pending motion to stay (Doc. 95) and Northland's pending

        motion in limine (Doc. 97) are DENIED AS MOOT.

(5)     The Clerk of Court shall enter judgment in favor of Plaintiff

        Northland Casualty Company and Third-Party Defendant Glacier

        Insurance of Libby, Inc., and shall CLOSE this case.

DATED this 9th day of August, 2016.

Dana L. Christensen, Chief District Judge
United States District Court