FILED
JAN 11 2019
Clerk, U.S Courts
District Of Montana
Missoula Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| NORTHLAND CASUALTY COMPANY, a Connecticut Corporation,<br><br>Plaintiff and Counter-Defendant,<br><br>vs.<br><br>JOSEPH S. MULROY DBA YORLUM RANCH AND YORLUM RANCH LTD, NORTHWEST LOG HOMES LLC, and DUANE KEIM,<br><br>Defendants,<br><br>JOSEPH S. MULROY,<br><br>Counterclaimant and Third-Party Plaintiff,<br><br>vs.<br><br>GLACIER INSURANCE OF LIBBY, INC., a Montana Corporation,<br><br>Third-Party Defendant. | CV 13–232–M–DLC<br><br>ORDER |

Before the Court are the parties' cross-motions for summary judgment (Docs. 128 & 131) and the Defendants' motion to supplement the record (Doc. 138).

-1-

## BACKGROUND

In 2006, Defendant and Counterclaimant Joseph S. Mulroy hired Duane Keim's company, Northwest Log Homes, LLC,[1] to build a log home near Trego, Montana. Among other responsibilities, Keim was to build and stain the log component of the home. He also partially remodeled a guest home using logs. Keim purchased logs from a log broker, and he did not treat the logs for insects. Several years later, Mulroy noticed signs of an active wood-boring powderpost beetle infestation in both the main home and the remodeled guest home. The infestation caused substantial damage to both structures, and it remains ongoing.

Mulroy asserted a claim for damages against Keim, and Keim tendered the claim to his insurer, Plaintiff and Counter-defendant Northland Casualty Company ("Northland"). Northland notified Keim of its position that the operative commercial general liability ("CGL") policy did not cover Mulroy's damages. Mulroy proceeded to file a complaint in state court, and Northland provided a defense under a reservation of rights. Without Northland's consent, Mulroy and Keim settled the claim. Keim admitted liability and assigned any rights under the CGL policy to Mulroy. Following a damages hearing, which Keim did not attend,

---

[1] To minimize confusion, Dwayne Keim and Northwest Log Homes are referred to throughout this Order as "Keim."

the state court awarded $208,824.58 in damages for remediation costs and $120,000 for loss of value, for a total of $328,824.58, plus interest and costs.

## LEGAL STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248. In ruling on a motion for summary judgment, a court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## DISCUSSION

The sole question before the Court is whether Northland has a duty to indemnify Keim for the damages suffered by Mulroy. Northland relies on three of the CGL policy's business risk exclusions to support its position that coverage

cannot be found: (1) exclusion j(6),[2] which excludes coverage for certain property damage arising from the insured's work on the damaged property; (2) exclusion k, excluding coverage for damages to the insured's "product"; and (3) exclusion l, which bars coverage for certain property damage to the insured's work arising from that work. Mulroy argues that the exclusions do not apply, either unambiguously or because they are ambiguous and accordingly must be construed in favor of coverage. If those arguments fail, Mulroy nonetheless contends that the reasonable expectations doctrine operates to create coverage.

The Court looks to Montana law for the "rules of decision." 28 U.S.C. § 1652. "The interpretation of an insurance contract is a question of law." *Babcock v. Farmers Ins. Exch.*, 999 P.2d 347, 348 (Mont. 2000). "If the language of a policy is clear and explicit, the policy must be enforced as written." *Nat'l Farmers Union Prop. & Cas. Co. v. George*, 963 P.2d 1259, 1261 (Mont. 1998). "Ambiguities are construed against the insurer and exclusions from coverage are construed narrowly because they are contrary to the fundamental protective purpose of insurance policies." *Id.* Further, "because exclusions are contrary to the fundamental purpose of the policy, such exclusions are frequently subject to

---

[2] Mulroy also briefs exclusion j(5). However, because the insurer has the burden to show the applicability of an exception to coverage, *Travelers Cas. & Sur. Co. v. Ribi Immunochem, Inc.*, 108 P.3d 469, 476 (Mont. 2005), and Northland did not rely on exclusion j(5) in its summary judgment motion, the Court does not address it.

-4-

challenge for ambiguity or inconsistency." *Newman v. Scottsdale Ins. Co.*, 301
P.3d 348, 355 (Mont. 2013).

Under the terms of the policy, Mulroy suffered "property damage"—
"[p]hysical injury to tangible property." (Doc. 26-1 at 34.) This Court previously
found that the initial grant of coverage did not extend to Mulroy's claim for
property damage because Keim's defective construction did not constitute an
"occurrence." The Ninth Circuit reversed, applying *Employers Mutual Casualty
Co. v. Fisher Builders, Inc.*, 371 P.3d 375 (Mont. 2016). On remand, Northland
does not contend that there was no occurrence, relying instead on the policy's
exclusions. Northland bears the burden of demonstrating the applicability of an
exclusionary clause. *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research,
Inc.*, 108 P.3d 469, 476 (Mont. 2005). If Northland meets its burden, Mulroy has
the burden of proving that an exception to the exclusion applies. *Id.*

## I.  Exclusion j(6)

Exclusion j(6) excludes coverage for "property damage" to "[t]hat particular
part of any property that must be restored, repaired or replaced because 'your
work' was incorrectly performed on it." (Doc. 26-1 at 24.) For its part, "your
work" is defined to include:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such
work or operation.

-5-

"Your work" also includes "warranties or representations" regarding the work, as well as the provision or omission of warnings or instructions. (Doc. 26-1 at 35.)[3]

That said, exclusion j(6) does not exclude coverage if the "property damage" falls under the "products-completed operations hazard." In relevant part, the "products-completed operations hazard" ("PCOH"):

a. Includes all . . . "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned . . . .

(Doc. 26-1 at 34.)

In the underlying action, Mulroy alleged—and the state court found—that Keim was negligent in failing to chemically treat the logs for insects. The use of the untreated logs constitutes Keim's "work," which was "incorrectly performed," causing "property damage" to Mulroy's home and guest house. Thus, upon a first read, the "unambiguous language" of the policy excludes coverage for remediation of at least a "particular part" of Mulroy's property unless the PCOH provision

---

[3] In the underlying action, Mulroy brought claims for negligence, negligent misrepresentation, and breach of warranty. Because the operative exclusions define "your work" and "your product" to include warranties, representations, the analysis as to each issue is the same as to each of the underlying causes of action. In other words, where there may fairly be coverage for negligence, there is also coverage for negligent misrepresentation and breach of warranty related to that negligence. Accordingly, the Court does not separately address coverage for each of the underlying causes of action, analyzing instead whether Keim may fairly find coverage under the various provisions of the policy.

-6-

applies. *See Heggem v. Capitol Indem. Corp.*, 154 P.3d 1189, 1193 (Mont. 2007) ("[A] court may not create an ambiguity where none exists, nor may a court rewrite an insurance policy by ignoring clear and unambiguous language to accomplish a good purpose." (citation and internal quotation marks omitted)).

The applicability of the PCOH provision depends on timing; if the damage occurred after Keim completed its work, then the PCOH provision is in play, and Northland cannot rely on exclusion j(6). Northland argues that the provision does not apply because Mulroy's property damage occurred when the logs were selected and placed, well before Keim finished the project. Mulroy counters that the property damage did not occur until several years after the home was finished, when he noticed beetle holes throughout the logs. Mulroy argues that although the beetles were present in the logs at the time of construction, they were "dormant," and that the "emergence, spread, and active re-infestation occurred after Northwest's work was completed." (Doc. 132 at 22.)

Here, the PCOH provision encompasses Mulroy's property damage, and exclusion j(6) is inapplicable. Property damage does not occur until there is "physical injury to or loss of use of tangible property." *Truck Ins. Exch. v. O'Mailia*, 343 P.3d 1183, 1186 (Mont. 2015). A "physical injury" is "a physical and material alteration resulting in a detriment." *Swank Enters. v. All Purpose Servs., Ltd.*, 154 P.3d 52, 56 (Mont. 2007). In this instance, although the beetles

were dormant in the logs at the time the home was built, the integrity and appearance of the home did not suffer until the later infestation. The use of untreated logs created the right conditions for the later property damage, but the damage did not occur at the time of construction.

Two Montana cases provide useful guideposts. Northland relies on *Swank Enterprises*, in which the Montana Supreme Court held that the "application of improper paint" to a water treatment plant constituted property damage because the painted surfaces would need to be stripped and repainted. *Id.* at 56. Mulroy, for his part, analogizes to *Truck Insurance Exchange*, in which the Court addressed a fire which arose from an improperly installed water heater and exhaust system. *Truck Ins. Exch.*, 343 P.3d at 1184. Prior to the fire, the inadequate exhaust system caused high temperatures near the water heater, which pyrolyzed nearby wood framing, meaning that the quality of the wood was degraded such that it would ignite at a lower than normal temperature. *Id.* at 1184–85. Faced with the question of whether pyrolysis was itself property damage, the Court held that although "pyrolysis created a condition that increased the probability of a later physical injury," the complained-of property damage arose from the fire, not the pyrolysis. *Id.* at 237. The Court found *Swank* distinguishable because the damages in *Swank* were suffered when the improper paint was removed and replaced, not when a later injury flowed from the initial use of improper paint. *Id.*

-8-

The facts here are immediately analogous to those of *Truck Insurance Exchange*. The use of untreated logs created the conditions for a later beetle infestation, but the complained-of damage did not occur until Mulroy had to remediate and/or replace portions of the structures. Accordingly, the property damage falls within the PCOH umbrella, and exclusion j(6) does not defeat coverage.[4]

## II.     Exclusion k

Exclusion k excludes coverage for "'property damage' to 'your product' arising out of it or any part of it." (Doc. 26-1 at 24.) "Your product" includes "[a]ny goods or products, *other than real property*, manufactured sold, handled, distributed or disposed of by [you]." (Doc. 26-1 at 34–35 (emphasis added).) "Your product" extends to include "[w]arranties and representations" regarding the product, as well as the provision or omission of warnings or instructions. (Doc. 26-1 at 35.)

The parties do not dispute whether Keim's work constitutes its "product" but rather whether Keim's "product" constitutes "real property." Common sense dictates that it does indeed, rendering exclusion k inapplicable. If a custom log home is not real property, it is hard to imagine what is. Nonetheless, Northland

---

[4] Because the Court finds exclusion j(6) inapplicable on the grounds of the PCOH provision, it does not reach Mulroy's other arguments on this issue.

-9-

briefs the exclusion extensively, relying on a case from the Indiana Court of Appeals in which that court applied the "your product" exclusion to a log home. *Jim Barna Log Sys. Midwest, Inc. v. Gen. Cas. Ins. Co. of Wis.*, 791 N.E. 2d 816, 830–31 (Ind. Ct. App. 2003). Setting aside the fact that Montana law governs this case, *Jim Barna* is unpersuasive for any number of reasons, most clearly because the court did not address the issue of whether the home was real property. *Id.*

Here, looking to the clear language of the policy, exclusion k does not apply. Indeed, if there were any question that "real property" does not include a log home placed on-site, the exclusion would be ambiguous, and it would accordingly be construed in favor of coverage. *Ribi Immunochem*, 108 P.3d at 474. Exclusion k does not bar coverage.

### III. Exclusion l

Exclusion l bars coverage for "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" (Doc. 26-1 at 24.) It "does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor." (*Id.*) As discussed in Section I above, the property damage falls within the PCOH. *See supra* p. 6–9. The parties dispute the applicability of exclusion l as to three issues: (1) whether the property damage is damage arising from Keim's "work"; (2) whether the exclusion is inapplicable because the damages were caused by a

subcontractor; and (3) whether, if the exclusion applies, it covers only damage to the logs themselves.

## A. Keim's "work"

The parties agree that at least some portion of Mulroy's damages constitute "'property damage' to '[Keim's] work,'" but they disagree as to whether the beetle infestation arose from Keim's work. Northland contends that the infestation arose from Keim's failure to treat the logs used to build Mulroy's home. Mulroy counters that "[t]he infestation is not Keim's work. He does not know how to make a beetle infestation nor did he intend for an infestation." (Doc. 132 at 35.)

Northland has the better argument. If Mulroy's position were successful, he would have had no basis for a claim against Keim in the underlying action.[5] Mulroy and Keim reached a settlement, approved by the state district court, in which Keim agreed that he had failed to comply with industry standards when he did not treat the logs with insecticide. The court concluded that all damages resulting from the beetle infestation were properly attributed to Keim's "negligence, negligent misrepresentation, and breach of warranty." (Doc. 34-1 at 3.) Keim's work included the preparation of the logs, and the failure to treat the logs was part of that work. Accordingly, at least some part of Mulroy's damages

---

[5] The log provider or broker, Ray Downing, was not named as a party defendant in the underlying action.

-11-

constitute "'property damage' to '[Keim's] work' arising out of it or any part of it and included in the 'products-completed operations hazard.'"

## B. Subcontractor

Mulroy contends that exclusion l does not apply because "the damaged work or the work out of which the damage [arose] was performed on [Northland's] behalf by a sub-contractor," the log broker who supplied the logs. (Doc. 26-1 at 24.) To support its position, Mulroy moves to supplement the record to include a declaration signed by Keim, in which he attests that the log broker "selected and delivered the logs" and "processed the logs by washing, measuring, and sorting them by size," "consistent with the specifications [Keim] provided to [the broker]." (Doc. 139 at 1.) The Court grants the motion to supplement. However, it finds that, even with the proffered declaration, the record does not give rise to a dispute of material fact.

The parties devote much of their argument to the issue of whether Ray Downing, the log broker, was a subcontractor. However, whether the log broker can fairly be classified as a subcontractor is immaterial because there has been no suggestion that the broker was responsible for treating the logs. Mulroy's theory in the underlying action, frequently repeated over the long course of this lawsuit, was that Keim negligently failed to treat the logs. Mulroy has not argued that there was negligence in selecting and using logs in which beetles lay dormant. He has not

alleged that the logs should have been washed differently. As determined by the state court, his damages arose from the failure to apply insecticide. If Keim had provided to the broker a specification that the logs be pretreated to avoid infestation, and if the broker had failed to meet that specification, Mulroy would have a strong argument on this point. However, no such allegations were made before the state court; no such allegations were made in Mulroy's Answer and Counterclaim, filed in April 2014; no such allegations were made in response to Northland's discovery requests; and no such allegations find support in Keim's declaration, which was offered in October 2018.

Assuming without deciding that the broker was a subcontractor, and accepting into the record Keim's declaration, Mulroy's damages simply cannot be attributed to anything other than Keim's "work." Mulroy's damages arose from the failure to treat the logs with insecticide, and the record cannot support a finding that this failure was caused by the log broker. Northland has met its burden of demonstrating that the "work out of which the damage [arose] was [not] performed on [Keim's] behalf by a sub-contractor." (Doc. 26-1 at 24.)

### C. Scope

Mulroy argues next that even if exclusion 1 applies—and it does, as outlined immediately above—it applies only to the logs themselves, not to those "parts of the home implicated beyond Keim's work, including all other work that was done

-13-

by subcontractors." (Doc. 132 at 36.) The Court agrees with this general proposition, but it is beside the point. The state court ordered remediation and loss-of-value damages strictly related to the infestation caused by the use of untreated logs. (Doc. 34-1.) The damages ordered in the underlying action are strictly for "'property damage' to '[Keim's] work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" (Doc. 26-1 at 24.)

Thus, exclusion l applies, barring coverage.

## IV. Illusory Coverage

Mulroy also contends that any potentially applicable exclusion is defeated by the principle that "an insurer is not allowed to deny coverage for which it has received valuable consideration." *Ruckdaschel v. State Farm Mut. Auto. Ins. Co.*, 948 P.2d 700, 702 (Mont. 1997). In Mulroy's words,

> [i]f Northland intended to exclude Keim's residential log home construction and all associated materials, then it should not have provided express coverages for 'Carpentry—construction of residential property not exceeding 3 stories' and 'subcontracted work—in connection with building construction, reconstruction, repair or erection' and charged an additional premium specifically for those coverages.

(Doc. 132 at 17.) Although it is true that Montana law protects consumers from illusory promises of coverage, it is not true that such protection is triggered here. The policy's declarations page simply classifies the type of work performed by its insured and assesses a premium based on those classifications. That the policy

-14-

places limitations on the coverage provided to carpenters does not render coverage illusory.

V. **Reasonable Expectations**

Mulroy's final argument is that, even if an exclusion technically applies, the reasonable expectations doctrine operates to override the technical language of the policy. Under Montana law, "[t]he . . . objectively reasonable expectations of insurance purchasers regarding the terms of their policies should be honored notwithstanding the fact that a painstaking study of the policy would have negated those expectations." *Am. Family Mut. Ins. Co. v. Livengood*, 970 P.2d 1054, 1059 (Mont. 1998). That said, this is true only where "painstaking study" is necessary: "the reasonable expectations doctrine is inapplicable where the terms of the policy at issue clearly demonstrate an intent to exclude coverage." *Fisher ex rel. McCartney v. State Farm Mut. Auto Ins. Co.*, 305 P.3d 861, 867 (Mont. 2013) (citation omitted).

Here, the reasonable expectations doctrine does not override the clear language of the policy because it would not be "objectively reasonable" to conclude that the policy covers Keim's deficiently performed "work." *See id.* While it may well be true that Keim believed he had broader coverage than he did, that belief did not find support in the policy itself.

Accordingly, IT IS ORDERED:

-15-

(1) The Plaintiff and Counter-defendant's Motion for Summary Judgment (Doc. 128) is GRANTED;

(2) The Defendants and Counterclaimants' Cross-Motion for Summary Judgment (Doc. 131) is DENIED;

(3) The Defendants and Counterclaimants' Motion to Supplement the Record (Doc. 138) is GRANTED; and

(4) The Clerk of Court shall enter judgment for the Plaintiff and Counter-defendant Northland Casualty Company and close this case.

DATED this 11th day of January, 2019.

Dana L. Christensen, Chief Judge
United States District Court